STATE OF NORTH CAROLINA v. CLINTES PERSON

No. 7414SC646

(Filed 16 October 1974)

1. **Burglary and Unlawful Breakings § 5; Larceny § 7— larceny of TV from apartment — sufficiency of evidence**

    Evidence in a prosecution for felonious breaking and entering and felonious larceny was sufficient to withstand defendant's motion for nonsuit when it tended to show that defendant and two others were looking for a TV to steal, defendant and the State's main witness entered their victim's apartment and removed her TV, and defendant and his accomplices sold the TV to another upon payment of approximately $50 to each of them.

2. **Criminal Law § 122— additional instructions after retirement of jury — no coercion**

    Additional instruction given by the trial court to the jury after they had deliberated for two hours that some twelve jury members would have to decide the case and " . . . I am hoping that you can determine it," did not coerce the jury into returning a verdict of guilty.

APPEAL by defendant from *Brewer, Judge,* 4 February 1974 Criminal Session of Superior Court held in DURHAM County.

Defendant was charged with felonious breaking and entering and felonious larceny. He was found guilty on both counts

and from judgment imposing prison sentence of five years on each count, to be served consecutively, he appealed.

*Attorney General James H. Carson, Jr., by Associate Attorney Raymond L. Yasser, for the State.*

*Vann & Vann, by Arthur Vann, for the defendant appellant.*

BRITT, Judge.

[1] Defendant assigns as error the failure of the court to grant his timely made motion for nonsuit. The evidence, viewed in the light most favorable to the State, tended to show: On 24 January 1973 Mrs. Alta Skinner left her apartment at 2836 Chapel Hill Road, Durham, at 7:30 p.m. and returned at about 10:00 or 10:30 p.m. She owned a 25-inch Zenith color television set that cost approximately $625. The TV was in her apartment when she left, but when she returned it was gone and the sliding glass doors leading to the patio were open. The State's main witness, Danny Bell, was an accomplice in the alleged crime. He testified that on that evening he, the defendant, and Will Brown were looking for a TV to steal; that they noticed that no lights were on in Mrs. Skinner's apartment; that Brown remained in the car as a lookout and he and defendant went to the front door of the apartment; that he knocked and when no one answered, he opened the door with a plastic card; that he and defendant entered the apartment, took the TV, carried it through the sliding glass doors which they did not close, and carried it on to the car; that they unscrewed the legs of the TV and placed it in the car; that they then carried the set to Delatha Self who paid each of them approximately $50.

We hold that the evidence was sufficient to survive the motion for nonsuit.

[2] Defendant assigns as error additional instructions given to the jury after the jury had deliberated for more than 2 hours. The record reveals:

"The Court: Members of the jury, I don't want any member of the jury to surrender any conscientious opinion that any member of the jury has about this matter, but you know the reason we select a jury and let the 12 jurors discuss the case is so that each member of the jury can express his or her opinion and also consider the opinion of the fellow jurors. It is very rare that all twelve would have the same

opinion to begin with. We want the benefit of your com-
bined judgment, and it may be that you have an idea that
you want your fellow members to consider. Maybe some of
the others have ideas that you ought to consider. In the
final analysis, members of the jury, we are seeking to
determine the truth of the matter, and so far as I know
you members of the jury have all the information or all of
the evidence available in the case.

"If we should have a failure of agreement now, it would
mean that the case would have to be tried over again, which
would mean added expense, and in its final analysis, some
twelve members of the jury are going to have to decide this
case, and inasmuch as you members of the jury have all the
evidence any other twelve would have, I AM HOPING THAT
YOU CAN DETERMINE IT. (Emphasis added.)

"As I stated at the outset, I do not ask and would not
permit a single one of you members of the jury to partici-
pate in a verdict that did not reflect your conscientious
opinion. I don't ask or want you to do that. I do want
you to consider the views of each of the members of the
jury. I might say there is not any reason to hurry in this
case. You can take as much time as you desire in the
deliberation and discussion of this case.

"The Court wants to emphasize the fact that it is the
duty of jurors to do whatever they can to reason the matter
over together as reasonable men and women and to recon-
cile the difference, if such is possible, without the surren-
der of conscientious convictions and to reach a verdict if
you can. I will let you at this time retire to the jury room
and resume your deliberations in this case."

Defendant contends that the instruction, " . . . I am hoping
that you can determine it," constituted an expression of opinion
by the trial judge in violation of G.S. 1-180. The assignment has
no merit.

The North Carolina Supreme Court has spoken on this
point. In *State v. Accor*, 281 N.C. 287, 290, 292, 188 S.E. 2d
332, 336 (1972), the court upheld additional instructions which
contained the following: " . . . someone ultimately is going to
have to decide this case in Gaston County and I hope it will be
you." We hold that the additional instructions challenged here
did not coerce the jury into returning a verdict of guilty.

We have considered the other assignment of error argued by defendant and find that it too is without merit.

No error.

Judges CAMPBELL and VAUGHN concur.